IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

BRUCE CARREKER,                       *
                                      *
          Plaintiff,                  *
                                      *
     v.                               *          2:13-cv-081
                                      *
INTERNATIONAL LONGSHOREMEN'S          *
ASSOCIATION; LOCAL # 1423;            *
GEORGIA STEVEDORE ASSOCIATION,        *
INC.; SSA COOPER, LLC; ATLANTIC       *
RO-RO STEVEDORING, LLC; and           *
PORTS AMERICA,                        *
                                      *
          Defendants.                 *

---

### O R D E R

---

On June 17, 2013, Plaintiff filed suit against several of his former employers, the employers' association,[1] and his union. (Doc. 1, "Compl.") In his complaint, he asserts claims of age discrimination, retaliation, breach of contract, and breach of the duty of fair representation, as well as a claim for punitive damages. (Id.) Now before the Court are two defense motions for summary judgment. (Docs. 27, 29.) Given the substantial similarity of issues and claims, the Court addresses the two motions concurrently, and for the reasons stated herein, both motions are **GRANTED**.

---

[1] Plaintiff concedes in his sur-reply brief that the employers' association, the Georgia Stevedore Association, Inc. ("GSA"), does not have the requisite number of employees to be held liable under the ADEA and Title VII. Thus, claims against Defendant GSA under Counts I and II are hereby **DISMISSED**.

# I.   BACKGROUND

## A.   Factual Background

For approximately twenty-five (25) years, Bruce Carreker ("Plaintiff") was employed as a longshoreman at the Port of Brunswick in Georgia. (Pl. Dep., Doc. 27, Ex. A at 9-13.) During that time, Plaintiff belonged to the International Longshoreman's Association, Local # 1423 ("the Union"), the recognized collective bargaining agent for longshoremen at the Port of Brunswick. (Id. at 9; Nixon Aff., Doc. 29, Ex. 2) The Union is operated by an Executive Board, which is made up of a President, Vice President, and other members.[2] (Nixon Aff. ¶ 2.) A number of shipping and stevedoring companies operate out of the Port of Brunswick, including Defendants SSA Cooper, LLC ("SSA Cooper"), Atlantic Ro-Ro Stevedoring, Inc. ("Atlantic Ro-Ro"), and Ports America (collectively, the "Port Employers"). (Compl. ¶ 11.) Throughout his twenty-five (25) years at the Port of Brunswick, Plaintiff has worked for each of the Port Employers. (Id. ¶ 12.)

The Union provides longshore workers to the Port Employers through a hiring hall, and all hiring is based on a seniority system. (Pl. Dep. at 13-14.) This seniority system is organized alphabetically, meaning those members with the highest seniority are part of category "A," and the next most senior members are category "B" and so on. (Id.) Plaintiff was a category "E" employee, which by all accounts is a high seniority position. (Id. at 12.) Each day, union members would go to the hiring hall, line

---

[2]   According to Plaintiff, Freddie Sams and Mike McDuffie are two such members. (Pl. Dep. at 73.)

up based on their seniority category, and the Union's business agent would call out the available positions for the day. (Id. at 13-14.) Based on his long tenure in the industry, Plaintiff had his pick of the available jobs and could work as many hours as he wished. (Id. at 12-13.) For the last six or seven years of his employment, Plaintiff was usually a "field foreman," a support position. (Id. at 16-17, 26.) In that role, Plaintiff would act as a supervisor, "making sure everybody does what they [are] supposed to do and if there's any problem that [arose] in the field concerning the men, [he would] step in and [] take care of it." (Id. at 17.) Plaintiff primarily worked on so-called "ro-ro" vessels, which required driving the cargo (usually cars or bulldozers) off the ship and into designated vehicle fields. (Id. at 15-16.) More specifically, Plaintiff was responsible for ensuring the other members went to the ship, drove the vehicle or other cargo off the ship and onto the designated field, and then returned to the ship to pick up the next vehicle. (Id. at 18-19.)

The Port Employers are members of the Georgia Stevedore Association, Inc. ("GSA"), an association that acts as a representative for the Port Employers in negotiating collective bargaining agreements ("CBA") with the Union. (Doc. 27, Ex. C ¶¶ 11-12.) To handle grievances filed by or against union members, the CBA between the Union and the Port Employers provided for a joint labor-management port grievance committee ("the PGC"), which is made up of representatives from the Union and Port Employers, as well as a non-voting representative from GSA. (Doc. 27, Ex. B at

38-39.)  The CBA specifically authorizes the PGC to make binding, final decisions on reported grievances.  (Id.)

On May 31, 2012, Atlantic Ro-Ro filed a grievance against Plaintiff and Daniel Wynn ("Wynn"), alleging that the two failed to ensure that drivers rolled up windows on the cars before returning to the ship, which resulted in damage to the cars after it rained. (Doc. 29, Ex. 4.)  Wynn was acting as Plaintiff's assistant on that day and "occasionally" worked as a field foreman, but had only been in the industry approximately thirteen (13) years.  (Pl. Dep. at 146.)  That grievance was heard by the PGC on August 7, 2012, and the PGC unanimously voted to issue disciplinary action against both Plaintiff and Wynn.  (Doc. 27, Ex. J at 2-3.)  Plaintiff received a seven (7) day suspension without pay and a six (6) month suspension from support jobs, such as field foreman.  (Id.)  Wynn, who was not a regular foreperson, received just a seven (7) day suspension without pay.  (Id.)

Plaintiff alleges that this suspension was merely pretext for age discrimination and retaliation.  As to the age discrimination, Plaintiff claims that "[t]here are too many [instances of age discrimination] to list" as "it was constant" and "they just did a lot of talking."  (Pl. Dep. at 110-11.)  As best the Court can discern from Plaintiff's deposition, the possible instances of age discrimination follow:

- Plaintiff claims that he ran a crane for about twenty (20) years and "they would always say 'You need to move over and let us — let us young people have this.'"  (Id. at 109-10.) "They" in this instance referred to "people like Mr. Maxwell and then there were people on the executive board like that

McDuffie cat . . . and . . . Freddie Sams, a bunch of them."[3] (Id.)

- Plaintiff alleges that when a new Executive Board came to power, they would say things like "give way to the new regime[.]" (Id. at 111.)

- Plaintiff was denied a job when he was told by "Shawn" with Atlantic Ro-Ro that "I wasn't doing nothing so he didn't need me." (Id. at 67-68.) That statement, according to Plaintiff, was "a broad statement, and it could cover age." (Id. at 165.)

- Plaintiff claims that he ran for president of the Union in December 2011, and his name was taken off the ballot because the Union believed he had not paid his dues. However, after Plaintiff demonstrated his dues were paid, his name was put back on the ballot.[4] (Id. at 114-17.)

- Plaintiff complains that Defendants would "nitpick[,]" claiming that he performed certain aspects of his job incorrectly and Atlantic Ro-Ro would "complain[] about everything[.]" (Id. at 147, 164.) Plaintiff claims this was "because they wanted to get rid of me because of my age." (Id. at 164.)

Over the course of his deposition, Plaintiff was asked "Do you have any evidence that you can describe that [the Port Employers] discriminated against you because of your age?" to which he responded "No, not to my knowledge." (Id. at 163.) And when pressed again for specific evidence of age discrimination, Plaintiff said "I don't know. It's just the attitude, the comments sometimes."[5] (Id. at 164.)

---

[3]    As noted above, Sams and McDuffie were both members of the Executive Board in 2012. There is no indication in the record who "Mr. Maxwell" is or what role he played, if any, in the operations of the Union.

[4]    Plaintiff claims that those elected were younger than him (Pl. Dep. at 118); however, he provides no specific information as to their ages.

[5]    The "comments" refers to the above-mentioned comment saying that Plaintiff was not needed.

As to the retaliation claim, Plaintiff alleges that his suspension resulted from his testifying on behalf of a co-worker who filed a sexual harassment claim against other Union members. Plaintiff testified at a meeting of the Executive Board on July 16, 2012, regarding that sexual harassment claim. (Compl. ¶ 23.) Following the meeting, the Executive Board wrote up a grievance on the sexual harassment claim, which the PGC heard on August 7, 2012. (Pl. Dep. at 96-97.) After the July meeting of the Executive Board, Plaintiff alleges that Freddie Sams, a member of the Executive Board, told him "We're going to get you; we're going to run you off; we're going to get rid of you." (Id. at 93-94.) On August 7, 2012, following the PGC hearing on the sexual harassment claim, Plaintiff claims that Mike McDuffie also told him that he was going to get rid of him. (Id. at 98-99.)

Plaintiff additionally cites other "harassment," seemingly to support a claim for constructive discharge, which the Court lists below.

- Plaintiff alleges that on some unspecified day, the sergeant-at-arms was directed by the president of the Union to write Plaintiff up for talking and disturbing the hiring process for the day. (Id. at 84, 100.)

- Plaintiff claims that requiring members to attend sexual harassment training is harassment because "if they are going to give that class and they are going to teach you one thing and do another, then what's the difference." (Id. at 71-72.)

Plaintiff ultimately retired on September 1, 2012, a decision he claims to have been forced into given the constant harassment he was facing at work. (Id. at 180 ("[I]t still was like forced. With all the harassment, I just – I got short patience. I got a

6

short fuse, so rather than get into something else, I took the easy road out.").)

## B. Procedural Background

Plaintiff received a Notice of Right to Sue from the EEOC with respect to his ADEA and retaliation claims on March 28, 2013. (Compl. ¶ 20.) Plaintiff then filed his complaint in this Court on June 17, 2013. GSA and the Port Employers ("the GSA Defendants") and the Union filed separate motions for summary judgment on July 21, 2014, to which Plaintiff has responded. Having reviewed the all the briefs and exhibits in this matter, the motions for summary judgment are ripe for the Court's review.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be

8

negated." <u>Fitzpatrick</u>, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>See</u> <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave Plaintiff appropriate notice of the motions for summary judgment and informed him of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 31-32.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

## III.  DISCUSSION

Plaintiff raises six counts in his complaint: (1) age discrimination; (2) retaliation; (3) the Union's breach of a duty to fairly and adequately represent Plaintiff; (4) the Union's breach of contract; (5) GSA's breach of contract; and (6) punitive damages. The Court will address each claim in turn.

## A. Age Discrimination (Count I)

Under the Age Discrimination in Employment Act of 1967 ("the ADEA"), it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing 29 U.S.C. § 623(a)(1)). A plaintiff may "establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008); Collins v. Compass Grp., Inc., 965 F. Supp. 2d 1321, 1333 (N.D. Ala. 2013) ("A plaintiff may establish a prima facie case of age discrimination by (1) providing direct evidence of discriminatory intent by the defendant, (2) presenting statistical proof of a pattern of discrimination by the defendant, or (3) providing other circumstantial evidence.").

When a plaintiff relies on circumstantial evidence to prove discrimination under the ADEA, courts employ the McDonnell-Douglas burden-shifting framework. Chapman, 229 F.3d at 1024. Under this framework, a plaintiff must first establish a prima facie case of discrimination. Id. A plaintiff may do so by showing that he was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) subjected to disparate treatment because of membership in the protected class. Caraway v. Sec'y, U.S. Dep't of Transp., 550 F.

App'x 704, 709 (11th Cir. 2013) (per curiam) (citing Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002)).

If a plaintiff successfully establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, non-discriminatory reason for its action. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1227 (11th Cir. 1993). This intermediate burden is "exceedingly light," and once the employer offers a justification, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason for its actions is pretextual and that the employer did in fact intend to discriminate. Ward v. Gulfstream Aerospace Corp., 894 F. Supp. 1573, 1578 (S.D. Ga. 1995) (citing Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir. 1994)).

The parties do not dispute that the first three elements of the prima facie case are met: (1) Plaintiff is fifty-eight (58) years old and thus a member of the protected class (Compl. ¶ 40);[6] (2) Plaintiff suffered an adverse employment action when he received a seven-day suspension without pay and a six-month suspension from support positions (Doc. 27, Ex. D ¶ 35);[7] and (3)

---

[6]    There is some confusion regarding Plaintiff's age. While his complaint says he is fifty-eight (58) years old, his Charge of Discrimination to the EEOC states that he is fifty-two (52) years old. (Compare Compl. ¶ 40 with Doc. 39, Ex. C.)

[7]    Plaintiff also alleges that he was constructively discharged from his position. The Eleventh Circuit has recognized constructive discharge as an adverse employment action: "The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1450 (11th Cir. 1998) (internal quotation marks omitted).

11

Plaintiff was otherwise qualified because he worked at the Port of Brunswick since 1987 (Compl. ¶ 22). See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) ("Our precedent holds that if a plaintiff has enjoyed a long tenure at a certain position, we can infer that he or she is qualified to hold that particular position."). Thus, the only remaining question is whether Plaintiff has met the fourth prong: that he suffered disparate treatment *because of* his membership in the protected class.

To establish a disparate treatment claim under the plain language of the ADEA a plaintiff must prove that age was the "but for" cause of the employer's adverse decision. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). That is, a plaintiff must prove that age was not just a motivating factor, but that age was *the* reason for the action. Plaintiff's own pleadings foreclose this as a possibility. In his complaint, he alleges that his suspension was the result of both (1) retaliation for testifying at a sexual harassment hearing and (2) age discrimination. (Compl.

---

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003) (quoting Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997)). Plaintiff does not come close to meeting this high burden. He states that he retired because of "harassment" but, as described in depth below, he presents no evidence that would lead the Court to characterize his situation as "intolerable." Plaintiff appears to rely on unsubstantiated allegations that two union members were convicted felons and did not properly represent him and that no reasonable person would continue working under those conditions. (Doc. 39 at 8.) Moreover, Plaintiff freely admits that he has a short fuse, so rather than get into more confrontations he "took the easy road out." (Pl. Dep. at 180.) See Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987) ("Part of an employee's obligation to be reasonable is an obligation not to assume the worse, and not to jump to conclusions too fast.").

¶¶ 23-26.) It is axiomatic that age is not the "but for" cause when Plaintiff claims "the real reasons for his suspension were retaliation for protected activity *and* age discrimination." (Doc. 39 at 2 (emphasis added).)

Even assuming Plaintiff's own admissions do not foreclose his claims, he has failed to show that his employer took the adverse action *because of* his age. Plaintiff attempts to prove this causal element by three separate means: (1) referring to comments made to him in the workplace, (2) other "harassment," and (3) comparator evidence. As to the comments made, the Court, having scoured the record, can find no comments that relate to age, save one. The comment, made by an unidentified individual at an unidentified time, was that Plaintiff needed to move out of the way and let younger people take over. However, it is entirely unclear if that comment was made in any reasonable proximity to the adverse action or if it was made by someone involved in his disciplinary process. Thus, that statement cannot constitute direct evidence in Plaintiff's favor. See Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989) ("[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age [] constitute direct evidence."); Standifer v. Sonic-Williams Motors, LLC, 401 F. Supp. 2d 1205, 1215 (N.D. Ala. 2005) ("[D]irect evidence does not include stray remarks in the workplace or statements by non-decisionmakers or statements by decisionmakers unrelated to the decisional process itself.") (internal quotations omitted).

Stray remarks, such as the one above as well as the other two comments — "give way to the new regime" and "you aren't doing nothing" — may "when read in conjunction with the entire record [] constitute circumstantial evidence of the decisionmakers' discriminatory attitude" if made by a decisionmaker. Truss v. Harvey, 179 F. App'x 583, 587 (11th Cir. 2006) (internal quotations omitted). "Shawn" from Atlantic Ro-Ro made the "you aren't doing nothing" comment. However, no one by that name participated in the August grievance hearing before the PGC, and Plaintiff does not allege that "Shawn" played any part in the disciplinary decision. And while the "give way to the new regime" comment was made by Executive Board members, given its context it does not raise an inference of age discrimination, but rather refers to a newly elected Executive Board. In fact, Plaintiff does not provide any argument to refute this interpretation.

Plaintiff also alleges that his name was removed from the ballot for Union President in 2011, but he does not dispute that his name was put back in time to be considered by the membership.[8] Simply stating that younger people were elected over him is insufficient to prove that the Union purposefully discriminated against him because of his age. Finally, Plaintiff, in his deposition, claims that Atlantic Ro-Ro would nitpick and complain about everything he did on the job. For example, Atlantic Ro-Ro complained that, under Plaintiff's supervision, the other workers

---

[8]     Plaintiff's name was removed because the Union believed he had not paid his dues, but once he showed that the dues had been paid his name was put back on the ballot.

left vans out on the field. (Pl. Dep. at 147-48.) The Court fails to see how this is probative of age discrimination, particularly when no age-related comments were made in connection with the interaction and there are no allegations that comparators did not face the same "nitpicking."[9] Plaintiff provides no factual context or argument that these complaints were the result of age discrimination, beyond stating in conclusory fashion that Atlantic Ro-Ro complained about his job performance because they wanted to get rid of him because of his age. See Mize v. School Bd. of Polk Cnty. Fla., 10 F. Supp. 2d 1314, 1318 (M.D. Fla. 1998) (holding that the plaintiff failed to meet the prima facie case of age discrimination in part because he offered "only the conclusory allegations that the person hired in his place was younger and less senior").

Thus, the Court will focus on the comparator evidence provided. As detailed above, when relying on circumstantial evidence of discrimination, a plaintiff may satisfy the prima facie case by "showing that [he] was subjected to an adverse employment action *in contrast with similarly situated employees outside the protected class*." Johnson v. Miller Brewing Co., 341 F. App'x 477, 478 (11th Cir. 2009) (per curiam) (internal quotations omitted) (emphasis added). In fact, "[i]n cases involving workplace discipline, the prima facie case requires the plaintiff to show that his or her employer treated people outside the plaintiff's

---

[9]   When pressed about comparators in his deposition, the questioning related to discipline against other workers for leaving car windows down, not general "nitpicking." (See Pl. Dep. at 121-26.)

15

protected class more favorably when they engaged in similar misconduct." Carroll v. Neumann, 204 F. Supp. 2d 1344, 1353 (S.D. Fla. 2002) (citing Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989)). To avoid second guessing an employer's reasonable decision and "confusing apples with oranges[,]" "plaintiff and the comparators must be similarly situated in all relevant aspects." Johnson, 341 F. App'x at 478-79 (internal quotation marks omitted). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1092 (11th Cir. 2004) (internal quotations omitted).

In Plaintiff's briefs, he asserts that Daniel Wynn is a valid comparator.[10] (Doc. 37 at 5.) Wynn, who was disciplined on the same day and for the same conduct as Plaintiff, received a seven (7) day suspension but no suspension from support positions. However, Wynn is not a valid comparator. First, Plaintiff does not provide the Court with information as to Wynn's age.[11] See Pastures v. Potter, No. 4:08-cv-108, 2009 WL 4781811, at *4 (S.D. Ga. Dec. 10, 2009) (finding that the plaintiff's age discrimination claim failed in part because "[n]either [plaintiff's] complaint (including all amendments to it) nor his response to the summary

---

[10]    In Plaintiff's deposition, he discusses many other employees, but does not provide any evidence as to their ages, background, or work history. (Pl. Dep. at 120-26.) Thus, the Court focuses only on that person described in the briefs.

[11]    The only reference Plaintiff makes is in his response to the GSA Defendants' motion for summary judgment, wherein he states that "Brad [sic] Wynn, [is] a younger Ship Foreman similarly situated to Plaintiff but with less experience[.]" (Doc. 39 at 3.)

judgment motion indicates the ages (neither exact age in years, nor age with relation to [the plaintiff]) of any specific co-workers.").

Assuming Wynn is outside the protected class, Plaintiff has more than twenty (20) years' experience and Wynn only has thirteen (13). In fact, Wynn was not a regular foreperson and only did the job "occasionally." (Pl. Dep. at 146.) Plaintiff, however, worked in a support position — like field foreperson — consistently for the past seven (7) years. (Id. at 26.) Defendants rely heavily on the fact that Plaintiff and Wynn were of different experience levels and often did different jobs.[12] Plaintiff, in his briefs, attempts to rebut this argument by stating that years of experience is synonymous to age, and thus a genuine issue of fact exists as to whether the harsher punishment was issued because of advanced age or advanced experience. The Court is not persuaded. In fact, the Eleventh Circuit has clearly held that experience is a valid factor for courts to consider and the comparator "must be *nearly identical* to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091 (emphasis added); Beard v. 84 Lumber Co., 206 F. App'x 852, 857 (11th Cir. 2006) (holding that the plaintiff and his comparator were not similarly situated where the plaintiff had much more experience than the comparator); Edwards v. Niles Sales & Serv., Inc., 439 F. Supp. 2d 1202, 1216 (S.D. Fla. 2006) ("[The]

---

[12]     As Defendants argue, "barring Wynn from accepting positions that he was usually not offered would be nonsensical and illustrates clearly why he is not a valid comparator." (Doc. 29, at 7.)

difference in experience demonstrates that Plaintiff and [his comparator] were not similarly situated for purposes of Plaintiff's prima facie case."). Plaintiff's own testimony — that Wynn was his assistant on the day in question — reinforces this point.[13]

Remarkably, Plaintiff even admits in his response to the GSA Defendants' Statement of Material Facts that he "has no evidence that the port employers discriminated against him because of his age." (Doc. 38 ¶ 83; Doc. 28 ¶ 83.) The lack of probative evidence certainly bears out this statement. Simply, Plaintiff has failed to set forth a prima facie case of age discrimination as to any of the named defendants and the Court finds that his claim must fail as a matter of law.

B.    **Retaliation (Count II)**

As with age discrimination claims, to successfully set forth a claim of retaliation under Title VII the plaintiff must first establish a prima facie case. Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). If this prima facie case is met, a presumption of retaliation arises and the burden shifts to the defendant to "proffer a legitimate, non-retaliatory reason for the adverse employment action." Id. If the defendant sets forth such a reason, the presumption disappears and the plaintiff must show that the reasons stated were merely a pretext. Id.; Masso v. Miami-Dade Cnty., 465 F. Supp. 2d 1260, 1264-65 (S.D. Fla. 2006).

---

[13]    Moreover, Plaintiff provides no indication of Wynn's disciplinary background. While Plaintiff asserts in his complaint that Plaintiff "never received any criticism of his job performance until after he testified" (Compl. ¶ 23), Defendants filed approximately ten (10) prior grievances against Plaintiff. (Doc. 27, Ex. H.) The only indication of Wynn's disciplinary record was Plaintiff's assertion that Wynn had only faced grievances for "simple stuff." (Pl. Dep. at 166-67.)

"A prima facie case of retaliation contains three elements: 'first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression.'" Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002) (quoting Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999)). In determining whether activity is statutorily protected, the Supreme Court and Eleventh Circuit have recognized two categories of activity: "An employee is protected from discrimination if (1) 'he has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) 'he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the participation clause)." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-3(a)).

For this count, Plaintiff states that (1) similarly situated, *younger* co-workers were treated more favorably than him; (2) he was falsely accused of performing his duties in a negligent manner; (3) he was constructively discharged because of the acts of retaliation; (4) he suffered adverse employment actions as a result of the retaliation (unwarranted discipline, demotion, and constructive discharge); and (5) he lost income as a result. (Compl. ¶¶ 49-56.) Before addressing the merits of Plaintiff's claim, a brief timeline of events is helpful.

- On May 31, 2012, Atlantic Ro-Ro filed a grievance against Plaintiff and Wynn for leaving car windows open. (Doc. 29, Ex. 4.)

- On July 16, 2012, Plaintiff testified at his co-worker's sexual harassment hearing before the Executive Board, where Plaintiff claims a member of the board told him that they were going to get rid of him. (Compl. ¶ 23; Pl. Dep. at 93-94.)

- On August 7, 2012, Plaintiff and Wynn appeared before the PGC and were disciplined for leaving the car windows down. (Doc. 27, Ex. J.)

- Later on August 7, 2012, the PGC heard the co-worker's sexual harassment complaint.[14] (Pl. Dep. at 178.)

- Following his testimony at the co-worker's hearing, Plaintiff alleges a second member of the Executive Board made a threat to get rid of him and that the Vice President questioned what he was doing.

### i. Prima Facie Case

The parties do not challenge that Plaintiff has met the first two elements of the prima facie case: (1) he engaged in protected conduct by testifying on his co-worker's behalf[15] and (2) he suffered an adverse employment action with his suspension.[16] Those facts notwithstanding, Defendants claim that Plaintiff cannot set forth a prima facie case because he is unable show that the suspension was causally related to his testimony on behalf of his

---

[14] Although Plaintiff is unclear as to which hearing occurred first, he testifies that after the co-worker's hearing, he consoled her and then went home, meaning his own hearing occurred first. (Id. at 176-77, 179.) This order of events is supported by the grievance filings (Doc. 27, Ex. D), and so the Court presumes Plaintiff's hearing was followed by the sexual harassment hearing.

[15] Plaintiff alleges in his complaint that he is proceeding under the opposition clause, but his briefs assert a claim under the participation clause. However, because the Court finds that Plaintiff's claim fails regardless of the clause, the Court need not address which clause applies.

[16] For the same reasons as above, Plaintiff fails to state a claim for constructive discharge.

co-worker. Plaintiff counters that given the temporal proximity between the comments made by members of the Executive Board, his testimony for his co-worker, and his own suspension as well as the merits of the suspension itself, he has met the prima facie case for retaliation.[17]

The Supreme Court recently held that, as in age discrimination claims, plaintiffs asserting retaliation claims may not rely on mixed motives, but must prove that retaliation was the "but for cause" of the adverse action. Univ. of Tex. S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013). Plaintiff here attempts to assert that two reasons — age discrimination and retaliation for testimony at a sexual harassment hearing — resulted in the same adverse action, making neither the "but for" cause. Assuming Plaintiff's claim is not, again, foreclosed by his pleadings, to meet the third prong of the prima facie case

> a plaintiff need only establish that the protected activity and the adverse action were not wholly unrelated. At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence.

Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). And while true that "[c]ausation may be inferred from close temporal proximity between the protected activity and the adverse

---

[17] Plaintiff vehemently disputes the cause for his suspension, claiming that checking windows was not in his job description. In Smith v. City of Fort Pierce, Fla., 565 F. App'x 774, 779 (11th Cir. 2014), the Eleventh Circuit held that "the key inquiry is whether [the employer] took the adverse action based on a retaliatory reason." Thus, the determination of the job duties is "of no consequence." Id.

action . . . temporal proximity alone is not sufficient when the unrebutted evidence shows that the decisionmaker did not have knowledge of the employee's protected conduct." Dent v. Ga. Power Co., 522 F. App'x 560, 562 (11th Cir. 2013). In short, Plaintiff must show: "(1) that the decisionmakers were aware of the protected conduct and (2) that the protected activity and the adverse act were not wholly unrelated." Godby v. Marsh USA, Inc., 346 F. App'x 491, 493 (11th Cir. 2009).

Plaintiff relies heavily on the threatening statements made by Sams and McDuffie, who were members of the Executive Board and present at the July meeting regarding the co-worker's sexual harassment claim. There is no evidence, however, that either Sams or McDuffie had any influence in the disciplinary action taken against Plaintiff in response to Atlantic Ro-Ro's grievance. To prove the discipline and testimony are causally related, then, Plaintiff must rely on the Union President and Vice President's presence at both the July Executive Board meeting and the August PGC hearing.[18] The PGC minutes indicate that the Union President and Vice President were both representing the Union at Plaintiff's grievance hearing, and therefore at least some of the decisionmakers were aware of Plaintiff's July testimony when

---

[18] Plaintiff's co-worker alleged that Freddie Sams, Purnell Harrington, and Terry Carmena sexually harassed her. (Doc. 37 at 2.) Although it appears from the record that Purnell Harrington was present at the PGC, there has been no reference to any role he played in the decisions. (Doc. 37, Ex. B.)

deciding to discipline him.[19]     Moreover, because those decisionmakers knew of the July testimony and presumably knew that the PGC would be hearing the sexual harassment claim later that day, it stands to reason that they were aware that Plaintiff could testify later in the afternoon as well.   Given the close temporal proximity between Plaintiff's testimony and discipline, and the fact the decisionmakers were present at both hearings, the Court cannot say as a matter of law that testimony and punishment are "not wholly unrelated."  See Godby, 346 F. App'x at 493.

### ii.  Legitimate, Non-Discriminatory Reason

Consistent with Title VII's burden shifting framework, Defendants have presented a legitimate, non-retaliatory reason for the suspension.  On May 31, 2012, before Plaintiff testified for his co-worker, Plaintiff was written up for failing to make sure car windows were closed.  At Plaintiff's grievance hearing in August, Terry O'Neal, an Atlantic Ro-Ro employee, presented evidence to this effect.  ("O'Neal Aff." Doc. 29, Ex. D.) Plaintiff was unanimously found "guilty of shirking of work" and was suspended.  (Doc. 39, Ex. B.)  Terry O'Neal, Norman Massey, Gary Miles, and John Walsh — who were all present at Plaintiff's grievance hearing — state that the disciplinary decision was based entirely on Plaintiff's failure to perform his job in the manner

---

[19]     The "protected activity" refers to the July hearing, as it appears from the record that Plaintiff was disciplined before he testified before the PGC regarding the co-worker's sexual harassment.

expected of a veteran field foreman.[20] (Doc. 27, Exs. C-F.) The Court finds that this evidence is more than sufficient to set forth a legitimate, non-retaliatory reason.

### iii.   Pretext

Having determined that Defendants met their burden of showing a non-retaliatory reason, the burden shifts back to Plaintiff to present sufficient evidence "to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). Conclusory allegations will not suffice, and the plaintiff must "meet the proffered reason head on and rebut it." Gerard v. Bd. of Regents of State of Ga., 324 F. App'x 818, 826 (11th Cir. 2009) (internal quotation marks omitted). "Unsupported assertions are *not* evidence of pretext." Id. (emphasis added).

Plaintiff's briefs do not address pretext; rather, he rebuts arguments raised in the motions for summary judgment related to the prima facie case.[21] Upon review of the record, particularly Plaintiff's deposition, the Court believes that his evidence of pretext rests on: (1) the comments made by Sams and McDuffie, (2) a comment made by the Union Vice President, Kenny Thorpe, (3)

---

[20]   Moreover, an e-mail sent from Terry O'Neal in November 2011 — months prior to the Atlantic Ro-Ro grievance — makes clear that Defendants honestly held the belief that Plaintiff failed to properly perform his job. (O'Neal Aff., Ex. A.) In that e-mail, O'Neal writes that Atlantic Ro-Ro expects Field Foremen to check windows and tell all drivers to make sure windows are up. (Id.)

[21]   To the extent Plaintiff seeks to use the temporal proximity from the prima facie case to support his claim for pretext, that claim must fail. See Jackson v. Hennessy Auto, 190 F. App'x 765, 768 (11th Cir. 2006) (holding that temporal proximity alone is insufficient to establish pretext).

Plaintiff's assertion that checking windows was not part of his job description, and (4) the harsher punishment received by Plaintiff in relation to Wynn. For reasons more fully developed below, none are sufficient to prove pretext.

First, neither Sams nor McDuffie were decisionmakers involved in the disciplinary process and so their comments are insufficient to prove pretext. (Pl. Dep. at 97-98.) See Kincaid v. Bd. of Trustees, 188 F. App'x 810, 816 (11th Cir. 2006) (finding that discriminatory statements by non-decisionmakers were not evidence of pretext).

Second, Plaintiff claims that Kenny Thorpe — who was present at the July Executive Board meeting and represented the Union at the August PGC hearing — made a comment to him after he testified on behalf of the co-worker.[22] Specifically, Plaintiff claims Thorpe said "What you got to do?" and Plaintiff responded "Man, I'm testifying for her." (Pl. Dep. at 178.) Neither Plaintiff's testimony nor his briefs present any factual context or argument for this statement and the Court fails to see how this limited interaction is probative of either (1) the falsity of Defendants' stated reason for the suspension or (2) a retaliatory motive.

Third, Plaintiff challenges the circumstances giving rise to the May 2012 grievance, arguing that it was not his responsibility to check the windows. This argument fails in three respects. First, another employee, who did not testify at the co-worker's hearing, was also punished for the same activity. Second, the

---

[22]    It is unclear from the record whether this statement was made after the July Executive Board meeting or the August PGC hearing.

grievance was filed well before Plaintiff's testimony at the Executive Board's July meeting. And third, the Eleventh Circuit is clear that "[i]f the given reason is one that may motivate a reasonable employer, the plaintiff cannot succeed simply by quarreling with the wisdom of that reason." Masso, 465 F. Supp. 2d at 1265. Thus, when it comes to the specific job duties at issue, it is not the Court's place to "second guess the business judgment of the employer." Id.

Finally, and in relation to the severity of his punishment, Plaintiff claims that he received harsher punishment than Wynn because he testified on his co-worker's behalf. Again, Defendants maintain that the difference in punishment was a result of Plaintiff's senior status in relation to Wynn and the fact that Plaintiff worked regularly in support positions whereas Wynn only did so on occasion. (See Doc. 29, Exs. C-F.) Plaintiff does not present any evidence to contradict this assertion. Without more, then, Plaintiff cannot demonstrate that Defendants expressed or held any retaliatory motive in suspending him, and he is left only with the fact that his testimony in July was just weeks before his August disciplinary hearing. But, as stated above, temporal proximity alone is insufficient to prove pretext. Johnson, 190 F. App'x at 768.

As such, Plaintiff has failed to show either that the stated reasons were false or that retaliation was the true reason, and thus his claim for retaliation must fail as a matter of law. See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160,

1163 (11th Cir. 2006) ("To avoid summary judgment the plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination. A reason is not pretext for discrimination unless it is shown *both* that the reason was false *and* that [retaliation] was the real reason." (internal quotation marks and citations omitted)). Perplexingly, Plaintiff again admits as much in his response to the GSA Defendants' Statement of Material Facts. When responding to the statement that "[t]he decision of the [PGC] on August 7, 2012 was based solely on [Plaintiff's] failure to perform the job expectations of a veteran field foreman which resulted in damage to cargo," Plaintiff writes that he "cannot refute the facts contained in [that paragraph.]" (Doc. 38, ¶ 73.)

   **C.   Breach of Duty to Fairly and Adequately Represent Plaintiff (Count III) and Breach of Contract (Count V) by the Union**

In Counts III and V,[23] Plaintiff alleges that the Union breached its duty to fairly and adequately represent him and that it breached the terms of the CBA as well. Specifically, Plaintiff claims that the Union (1) failed to represent his rights and interests at the hearing on his grievance, (2) denied him a right to a fair hearing, (3) demoted him under false pretenses, and (4) breached the terms of the CBA.[24]   (Compl. ¶¶ 57-61.) The Supreme Court has referred to claims against the employer and Union for

---

[23]    The complaint does not assert a "Count IV."

[24]    Plaintiff also raises this breach of CBA claim against GSA, who never actually employed Plaintiff but rather negotiated the CBA on behalf of the Port Employers. (Massey Aff. ¶¶ 11-12.)

27

breach of the CBA and duty of fair representation as "inextricably interdependent" and, as such, characterizes them as "hybrid claims." DelCostello v. Int'l Bros. of Teamsters, 462 U.S. 151, 164-65 (183) ("The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301, [] but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under the collective-bargaining agreement." (internal citations and quotation marks omitted)).[25] "To prevail against either the company or the Union, . . . [the employee] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." United Parcel Serv. v. Mitchell, 451 U.S. 56, 66-67 (1981).

In DelCostello, the Supreme Court adopted a six-month statute of limitations for these hybrid cases. DelCostello, 462 U.S. at 169-171; Coppage v. U.S. Postal Serv., 281 F.3d 1200, 1204 (11th Cir. 2002). Thus, a plaintiff seeking to assert such a claim must file suit within six months from "the date [he] knew or should have known of the Union's final action or the employer's final action, whichever is later." Adams v. United Paperworks Int'l Union A.F.L.-C.I.O., 189 F.3d 1321, 1322 (11th Cir. 1999). The final

---

[25]    Plaintiff does not explicitly refer to his claim as a hybrid claim; however, because he is filing a suit under the National Labor Relations Act for both breach of the CBA and breach of the duty of fair representation, the Court construes his argument as such, just as Defendants did in their briefs. Plaintiff has not disputed this characterization.

action is referred to as "the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." Proudfoot v. Seafarer's Int'l Union, 779 F.2d 1558, 1559 (11th Cir. 1986); Youngblood v. Potter, 262 F. Supp. 2d 1309, 1314-15 (M.D. Ala. 2003) (ruling that a plaintiff had six months to file his lawsuit from the date he "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation" (internal quotation marks omitted)).

Here, at the absolute latest, the "final action" was on September 1, 2012, when Plaintiff retired. He did not, however, file his complaint until June 17, 2013, more than nine months after that action. Plaintiff appears to claim that he appealed the grievance filed against him but was not notified of a hearing and was not permitted to participate. (Doc. 37 at 6.) As Plaintiff puts it, he "filed an appeal against the whole thing, the whole — this whole thing that day, and I never heard anything back from them. Nobody contacted me, nothing." (Pl. Dep. at 90.) However, he freely admits that he dropped that grievance before his retirement.[26] (Id. at 100 ("As — when it came up, I dropped it.").) For this reason, the Court holds that his claims against the Union for breach of the duty to fairly represent him and breach of contract are both time barred and fail as a matter of law.

---

[26] Before Plaintiff retired, he filed a grievance against Atlantic Ro-Ro for "double standards of work, ethics invoked on specific individual, single or called out repetitiously [sic] regarding work performance." (Doc. 39, Ex. B.) However, Plaintiff dropped said grievance on August 7, 2012. (Id.)

**D. Breach of Contract by GSA (Count VI)**

Plaintiff concedes in his response to Defendant GSA's motion for summary judgment that he does not have sufficient evidence to maintain a breach of contract claim against GSA. Accordingly, that claim is hereby **DISMISSED**.

**E. Punitive Damages (Count VII)**

Because the Court has found that, as a matter of law, all of Plaintiff's claims fail, it need not address any claim for punitive damages.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment (Docs. 27, 29) are **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants. The Clerk shall terminate all deadlines and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this _20th_ day of November, 2014.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA
